DONALD GEORGE PROUSE AND OLIVIA ANN PROUSE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Prouse v. Commissioner
Docket No. 17034-79.
United States Tax Court
T.C. Memo 1982-403; 1982 Tax Ct. Memo LEXIS 346; 44 T.C.M. (CCH) 497; T.C.M. (RIA) 82403; July 19, 1982. *346 Taxpayer D lost his records of and receipts for his 1977 employee business expenses. He attempted to reconstruct these expenses in part by using his records and receipts for 1978. Held, D lost his 1977 records and receipts due to circumstances beyond his control within the meaning of sec. 1.274-5(c)(5), Income Tax Regs.Held further, D's records and receipts for 1978 reasonably reconstruct his 1977 expenses for meals, laundry, and cleaning incurred while he was away from home on business. Donald George Prouse and Olivia Ann Prouse, pro se. Darwin Thomas, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency of $1,984 in petitioners' Federal income taxes for 1977. The issue for decision is whether petitioners have adequately substantiated their unreimbursed employee business expenses. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Donald Prouse and Olivia Ann Prouse resided in Smyrna, Tennessee, when they filed their petition herein. Mr. Prouse is an engineer. During 1977, he was employed *347 by two companies which did consulting work for corporate clients. From January 1 to April 22, Mr. Prouse was employed by Applied Consulting and Technical Services, Inc. (Applied), in Abilene, Texas. From April 23 to July 1, he was employed by Mantecs Corporation, also in Abilene, Texas. From July 18 to October 7, he was employed by Applied in Sacramento, California. From October 21 to December 31, he was employed by Mantecs Corporation in Sunnyvale, California. When Mr. Prouse was employed in Abilene, Texas, he worked at Rockwell International. When he was employed in Sacramento, he worked at a company known as Aerojet. When he was employed in Sunnyvale, he worked at Lockheed's Missiles and Systems Division. The parties have stipulated that petitioners' tax home during all of 1977 was Buhl, Idaho. They have also stipulated that Mr. Prouse resided in Abilene, Texas, while he worked in Texas and that he resided in Buhl, Idaho, while he worked in California. During some part of the time that Mr. Prouse worked and resided in Abilene, his wife and children lived with him. They resided in Buhl while he worked in California. Applied and Mantecs Corporation reimbursed Mr. Prouse *348 for a portion of his living expenses during 1977. Applied paid him approximately ten dollars per diem when he was employed in Sacramento, for a total of $656. Mantecs Corporation paid him ten dollars per diem while he was employed in Sunnyvale, for a total of $600. Applied also paid him $1,180 when he was employed in Abilene. None of these reimbursements were reflected on the Forms W-2 for 1977 which Applied and Mantecs issued to Mr. Prouse. When Mr. Prouse worked in Texas and California, he kept a diary which reflected his expenses for meals, lodging, tips, cleaning, laundry, and transportation. He retained receipts for most of these expenses which he stored in a manila folder along with his diary. However, Mr. Prouse's records for 1977 were lost shortly before December 31, 1977. When Mr. Prouse's diary and most of his receipts were lost, he was working in a top security area at Lockheed's Missiles and Systems Division. He had been keeping the manila folder containing his business expense records in his office. In December 1977, he left work for the holidays. He attempted to take his folder with him. However, because he was working in a top security area, the security guards *349 would not permit him to leave the building with the folder. They told him that the folder and its contents would have to be examined and he would have to be issued a receipt for the folder before he could remove it from the premises. Mr. Prouse informed the security guards that he could not await a document check because he had to catch a plane. They suggested that he leave the folder at the security counter. They told him that it would be delivered to the main security booth where he could reclaim it upon his return from the holidays. Pursuant to their suggestion, he had the folder containing his records placed in a pigeonhole behind the security counter. When Mr. Prouse returned after the holidays, the guards at the main security booth could not find the folder. They advised him to return in a day or so and told him that they would then have it for him. However, when he reappeared, they did not have his folder. They had been unable to locate it. The security officer speculated it had been destroyed in the confidential papers shredder. [1]
Petitioners deducted unreimbursed *350 employee business expenses of $4,982 for 1977, despite Mr. Prouse's loss of his records. At trial, petitioners were able to produce some receipts to substantiate Mr. Prouse's meal, lodging, and gas expenses during 1977. Mr. Prouse testified that his records for 1977 had shown that his employee business expenses averaged between $30 and $32 daily when he was away from Buhl, Idaho. Petitioners also introduced into evidence Mr. Prouse's business expense diary and receipts for 1978 to aid in the reconstruction of his 1977 expenses. Mr. Prouse testified that he kept the same type of records in 1977 as he kept in 1978. He also contended that his pattern and approximate amount of expenses were the same in 1977 and 1978. OPINION In general, a taxpayer who travels away from home on business is entitled to deduct his unreimbursed employee business expenses, including amounts paid for meals, lodging, laundry, and cleaning. Section 162(a)(2). [2] *351 See also section 1.162-2(a), Income Tax Regs. However, the taxpayer must substantiate the expenses he seeks to deduct with adequate records or evidence corroborating his own statements. Section 274(d). Respondent does not contend that the expenses Mr. Prouce incurred in California and Texas were anything other than employee business expenses incurred away from home on business. He has stipulated that petitioner's tax home during all of 1977 was Buhl, Idaho. [3] *352 However, he has disallowed all of petitioners' employee business expenses for 1977 based upon their failure to substantiate those expenses. Section 274(d). Because petitioners have the burden of showing respondent's determination to be incorrect, Rule 142(a), [4] petitioners' success in this case rests upon their ability to substantiate adequately Mr. Prouse's 1977 employee business expenses. Petitioners concede that they do not now possess records from 1977 which can satisfy the general substantiation requirements of section 274(d). Instead, they argue that Mr. Prouse once had adequate records for 1977 which he lost due to circumstances beyond his control. They contend that they may substantiate his 1977 expenses by a "reasonable reconstruction of his expenditures," pursuant to section 1.274-5(c)(5), Income Tax Regs.
Section 1.274-5(c)(5), Income Tax Regs., sets forth two requirements which a taxpayer must satisfy to substantiate his business expenses when he has lost such records. First, he must show that his records have been lost due to circumstances beyond his control. *353 Second, he must reconstruct his expenses in a manner which is reasonable. We agree that Mr. Prouse's records were lost due to circumstances beyond his control. He left them at his place of work in an area where security was important and where specific procedures had been established to ensure security. He left them at a security counter where he was advised by security guards that they would be secure. [5] When the records disappeared, the security personnel expected to locate them in a few days. Being unable to do so, they could only speculate as to the cause of the records' disappearance. Mr. Prouse did not misplace, abandon, neglect or accidentally discard his records. [6] Compare Gizzi v. Commissioner,65 T.C. 342 (1975) (loss of records by taxpayer who left home due to marital discord was not beyond his control). He was aware of the need to preserve them, and he acted in a manner reasonably calculated to ensure their preservation *354 while he was away from the office. Under these facts, we find that the unexpected loss of Mr. Prouse's portfolio was due to circumstances beyond his control. Accordingly, petitioners are entitled to substantiate Mr. Prouse's employee business expenses for 1977 by a reasonable reconstruction of his expenditures pursuant to section 1.274-5(c)(5), Income Tax Regs. To reconstruct Mr. Prouse's 1977 employee business expenditures, petitioners introduced into evidence Mr. Prouse's diary and receipts for 1978. Mr. Prouse testified that he maintained the diary of and receipts for his 1978 expenses in the same manner that he had maintained his records of his 1977 expenses. He testified that his pattern of spending for meals, lodging, telephone, cleaning, and laundry was the same in 1978 as it was in 1977. Mr. Prouse further testified that his expenses for 1977 had averaged between $30 and $32 daily. We find that petitioners' use of Mr. Prouse's 1978 diary and receipts to reconstruct his 1977 meal, laundry and cleaning expenses is reasonable in pattern *355 and approximate amount. [7] A person's dining or cleaning habits typically do not alter significantly over a period of months. Similarly, the cost of a stable pattern of meals and cleaning is unlikely to change dramatically over a period of months, even in times of moderate inflation. Mreover, it is not practicable for a person to reconstruct their meal or cleaning expenses by writing to various restaurants or cleaning establishments and requesting price lists for 1977. Mere lists do not indicate what a past patron ordered, nor how many items he delivered for clearning. In addition, a taxpayer's request for more detailed information is not likely to be satisfied because, unlike motels and hotels, restaurants and cleaners typically do not retain records of individual customers and their orders. Mr. Prouse's records for January and February of 1978 showed that *356 during that period he had average expenses of $23 per day for meals and $37.50 per month for cleaning and laundry. For the reasons articulated above, we find that Mr. Prouse has reasonably reconstructed meal expenses for 1977 of $23 per day and cleaning expenses of $37.50 per month. Since the parties have stipulated the periods during which Mr. Prouse worked away from his tax home, we know the approximate number of days on which Mr. Prouse had business travel expenses. [8] *357 Thus, based on petitioners' reconstruction of Mr. Prouse's approximate business travel expenses and the number of days he traveled away from home, we conclude that Mr. Prouse incurred employee business expenses comprised of meals, laundry, and cleaning costs in the amount of at least $7,133 during 1977. We further find that petitioners' reconstruction of Mr. Prouse's 1977 employee business expenses is not reasonable with respect to his lodging, automobile, and telephone costs. We have negligible evidence as to how far Mr. Prouse drove on business or how many business calls he made in 1977. Although the parties stipulated to Mr. Prouse's duration and places of work assignments for 1977, this does not establish the number of days, miles or calls that he logged away from home on his work assignments. Similarly, the 1978 diary does not aid in these determinations. A taxpayer may spend many more nights, drive many more miles, or place many more calls away from home on business during one year than he does the next. Even assuming that we can approximate for 1977 the number of nights Mr. Prouse spent away from home or the business calls which he made, petitioners have not reconstructed an average cost for these expenses. [9] Telephone costs may vary widely depending upon such factors as distance, time of day, and duration of the call. Similarly, the *358 cost of lodging varies according to location, availability and plushness. Mr. Prouse incurred lodging expenses and phone expenses during 1978 in Salt Lake City, Utah and Nashville, Tennessee. Petitioners introduced no evidence to show that the cost of living in these cities during 1977 was approximately the same as living in Texas and California during 1977. Moreover, the few records which petitioners have of Mr. Prouse's 1977 lodging expenses, as well as Mr. Prouse's 1978 records, show that Mr. Prouse's lodging expenses varied substantially from time to time both in 1977 and in 1978. [10]
We do not doubt that Mr. Prouse incurred some employee business expenses comprised of lodging, telephone, and automobile costs during 1977 while he was away from home on business. These expenses may have been of sizeable amount. Nonetheless, *359 the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), whereby the court could approximate business expenses and permit some deudctions, has been replaced by the substantiation requirements provided in section 274(d). Under the substantiation requirement provided in section 1.274-5(c)(5), Income Tax Regs., petitioners have failed to establish a reasonable basis for reconstructing Mr. Prouse's 1977 employee business expenses for lodging, telephone, or automobile costs. [11] Thus, petitioners have failed to satisfy their burden of proving that they are entitled to deduct such expenses. Accordingly, respondent's disallowance of petitioners' deduction for employee business expenses comprised of Mr. Prouse's lodging, telephone, and automobile costs during 1977 is sustained. We note that petitioners introduced into evidence a few receipts for Mr. Prouse's 1977 business *360 travel expenses which were not lost at Lockheed. These receipts constitute direct documentary evidence. Because they were incurred while Mr. Prouse was away from home on business, they satisfy the general "adequate records" substantiation requirement of section 274(d). Thus, petitioners do not have to reconstruct Mr. Prouse's 1977 business travel expenses to the extent that they are represented by receipts. Petitioners have satisfied their burden of proving that Mr. Prouse incurred additional employee business expenses of $293.24 as represented by the receipts. [11]
Becuse Mr. Prouse received reimbursement for some of his 1977 employee business expenses, petitioners are entitled to deduct only such expenses as well unreimbursed in 1977.Section 1.274-5(e)(3), Income Tax Regs. Petitioners' actual receipts for 1977 and their reasonable reconstruction of Mr. Prouse's 1977 records for meals, laundry, and cleaning expenses show that petiioners incurred employee business expenses of $7,426.24 during 1977. [12] Petitioners received reimbursement of *361 $2,436. [13] Thus, petitioners have reconstructed unreimbursed employee business expenses of $4,990.24. Accordingly, we find that petitioners have sustained their burden of proving that they were entitled to deduct the $4,982 of employee business expenses which they reported on their 1977 return. Respondent's disallowance of their employee business expense deductions will not be sustained. To reflect concessions between the parties, Decision will be entered under Rule 155.
Footnotes
1. From the record, it is unclear whether there was any difference between a security officer and a security guard.↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue.
3. The expression "tax home," as used within the Federal income tax law, is often synonymous with a taxpayer's principal place of employment. See, e.g., Michaels v. Commissioner,53 T.C. 269, 273 (1969), and cases cited therein. However, when a taxpayer's principal place of business is temporary, his tax home may be located somewhere other than his workplace. See, e.g., Bochner v. Commissioner,67 T.C. 824, 827 (1977); Dean v. Commissioner,54 T.C. 633, 667 (1970); Michaels v. Commissioner,supra.
In this case, respondent does not dispute that Mr. Prouse's places of business during 1977 were temporary and agrees that Buhl, Idaho, not Texas and California, was Mr. Prouse's tax home. Thus, when Mr. Prouse traveled to and worked in Texas and California, he was away from home within the meaning of section 162(a)(2) and may deduct his traveling expenses accordingly. ↩
4. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.↩
5. Compare James v. Commissioner,T.C. Memo. 1980-99 (records stolen from truck constituted loss beyond taxpayer's control) and Freedman v. Commissioner,T.C. Memo. 1976-332↩ (sublessee discarding taxpayer-lessor's records was loss beyond taxpayer's control).
6. Compare Barry v. Commissioner,T.C. Memo. 1978-250↩ (loss was not beyond taxpayer's control when caused by his eviction from appartment).
7. The regulations and the legislative history provide little guidance as to what may constitute a "reasonable reconstruction." See, e.g., section 1.274-5(c)(5), Income Tax Regs. See also H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 427; S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707↩, 741.
8. We have assumed that Mr. Prouse was away from home no more than 5 days each week while working in California, based on the parties' stipulation that he resided in Buhl with his wife and children during that period. This may underestimate Mr. Prouse's time away from home somewhat, because his records for 1978 show that he returned home less than once every two weeks. We have also assumed that Mr. Prouse was away from his tax home 7 days each week while working in Texas, based upon the parties' stipulation he resided in Abilene during that period.
9. If petitioners had established a reasonable estimate of the number of miles Mr. Prouse had driven, their deductible mileage expense could have been determined using respondent's tables of mileage rates. ↩
10. The expenses shown on the 1977 receipts range between $4.17 and $10.90 nightly.The expenses recorded in the 1978 diary range between $2.40 and $5.11 nightly.↩
11. Petitioners have failed to establish why they could not have reconstructed Mr. Prouse's approximate nightly lodging costs by contacting the places at which he stayed. As discussed, supra,↩ hotels and motels typically maintain records of their quest's names as well as the nights of lodging for which each guest had paid.
11. The lodging receipts total $251.74, the meal receipts total $34.50, and the gas receipt is for $7.00. The sum of these receipts is $293.24.↩
12. Reconstructed expenses, $7,133; travel receipts, $293.14; total expenses, $7,426.24. ↩
13. The parties have stipulated that petitioners received reimbursement of $1,256 which was not reported on their Forms W-2. Evidence submitted at trial shows that they received an additional $1,180 reimbursement which was not reported on their Forms W-2.↩